Felice B. Galant
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Tel.:  (212) 318-3000
Fax:  (212) 318-3400
felice.galant@nortonrosefulbright.com

Matthew H. Kirtland (admitted *pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001
Tel.:  (202) 662-0200
Fax:  (202) 662-4643
matthew.kirtland@nortonrosefulbright.com

*Attorneys for Defendant Republic of Kazakhstan*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ANATOLIE STATI** *et al.* ) | |
| ) | |
| **Plaintiffs,** ) | |
| v. ) | Civ. No. 17-cv-05742 (RA) |
| ) | |
| **REPUBLIC OF KAZAKHSTAN,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DECLARATION OF MATTHEW H. KIRTLAND

I, Matthew H. Kirtland, declare, under the penalty of perjury, as follows:

      1.     I am a partner at Norton Rose Fulbright US LLP, counsel for Defendant Republic of Kazakhstan ("Kazakhstan") in the above-captioned action.  I submit this declaration in support of Kazakhstan's Motion to Dismiss the Complaint or, in the alternative, Stay ("Motion") this action on the grounds that (i) this Court lacks subject matter jurisdiction over the matter, (ii) this Court lacks personal jurisdiction over Kazakhstan, (iii) venue is improper, and (iv) Plaintiffs have failed to state a claim in Count I against Kazakhstan.  This declaration sets forth the

procedural history relevant to the Motion and place before the Court the exhibits referenced in the accompanying Memorandum of Law in Support of the Motion. This declaration is based upon my personal knowledge and the documents I have reviewed.

2. As set forth in the Complaint, on December 19, 2013, an international arbitral tribunal seated in Sweden issued an award (the "Arbitral Award") in favor of the Stati Parties and against Kazakhstan in the amount of $497,685,101. Compl. ¶ 14. Of that amount, $199 million was awarded as compensation for the Stati Parties' investment in a liquefied petroleum gas plant (the "LPG Plant"). On March 19, 2014, Kazakhstan commenced a proceeding in the Svea Court of Appeal seeking to set aside the Arbitral Award (the "Annulment Proceedings"). Compl. ¶ 15.

3. Under English law, a party seeking to enforce an arbitral award files an *ex parte* application with the appropriate court to obtain an order confirming the award. Such applications are routinely granted. The court's order is then served on the opposing party who has a right to apply to set the order aside. In these circumstances, the applicant's right to enforce the award is suspended and the court will usually order either a stay of execution of the order granting permission to enforce, or an adjournment of the decision until the challenge has been fully determined.

4. Pursuant to this procedure, in February 2014, the Stati Parties filed an *ex parte* application to enforce the Arbitral Award in the High Court of Justice, Queen's Bench Division, Commercial Court, in London, England ("London Court"). This application was granted that same month. *See Anatolie Stati, et al v. Republic of Kazakhstan*, Neutral Citation Number: [2017] EWHC (1348), Case No: CL-2014-000070, High Court of Justice, Queen's Bench Division, Commercial Court, Before Justice Knowles (June 6, 2017) ("London Judgment"). A

true and correct copy of the London Judgment is annexed hereto as **Exhibit 1**, ¶ 3.  Thereafter, the Stati Parties served the London Judgment on Kazakhstan, and on April 7, 2015, Kazakhstan filed an application to annul and/or set aside the permission to enforce the Arbitral Award, and presented its then-known New York Convention defenses. *See id.* ¶ 5.

5. In March 2015, Kazakhstan requested permission in this Court under 28 U.S.C. § 1782 to serve a subpoena on the law firm of Clyde & Co. for documents in other arbitrations in which the Stati Parties had participated and where the LPG Plant's valuation also was at issue. *See In re Ex Parte Application of Petitioner Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, No. 1:15-mc-0081-P1 (S.D.N.Y.). Kazakhstan's primary allegation in support of its request was that in these other arbitrations the Stati Parties would have been incentivized to present a different valuation for the LPG Plant than they had presented in the arbitration with Kazakhstan. The Stati Parties intervened, asking this Court to either deny Kazakhstan's request or quash the resulting subpoena. By order dated June 22, 2015, the Court (Hon. J. Stein) issued an Order rejecting the Stati Parties' arguments and allowing the production of documents by Clyde & Co. to Kazakhstan to proceed. *See In re Ex Parte Application of Petitioner Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, No. 1:15-mc-0081-P1 (S.D.N.Y.), Dkt. No. 21. A true and correct copy of this Order is annexed hereto as **Exhibit 2**.

6. Together with additional information subsequently obtained by Kazakhstan, the documents revealed that the Stati Parties, over a period of multiple years, had artificially inflated the construction costs of the LPG Plant and falsified their financial statements. The Stati Parties

then used those financial statements to obtain a $199 million bid for the LPG Plant from KMG, the state-owned oil and gas company of Kazakhstan (the "KMG Indicative Bid").

7.  During the arbitration, the Stati Parties argued to the arbitral tribunal that the KMG Indicative Bid was a valid, independent basis for valuing, and awarding damages for, the LPG Plant. The Tribunal relied upon the KMG Indicative Bid and awarded the Stati Parties $199 million in compensation for the LPG Plant.

8.  In August 2015, Kazakhstan applied to the London Court to amend its pleadings to add the defense that enforcement of the Arbitral Award would contravene English public policy by reason of fraud by the Stati Parties. *See* Ex. 1 (London Judgment) ¶ 6.

9.  In January 2017, Kazakhstan submitted extensive witness evidence, documents, and legal submissions to the London Court in support of its application to amend. A hearing was held on this application to amend on February 6–7, 2017, in which the Stati Parties participated fully. On June 6, 2017, the London Court issued its ruling. *See* Ex. 1 (London Judgment). The London Court set Kazakhstan's fraud allegations to be "examined at trial and decided on the merits." *Id.* ¶ 93. The trial is set to commence not before October 2018.

10. On September 20, 2014, the Stati Parties filed a petition to confirm the Arbitral Award pursuant to the New York Convention in the United States District Court for the District of Columbia (the "Washington Proceedings"). A true and correct copy of the docket in *Stati v. Republic of Kazakhstan*, No. 1:14-cv-1638 (D.D.C.) is annexed hereto as **Exhibit 3**. Kazakhstan filed its Opposition to Petition to Confirm Arbitral Award on February 26, 2015. *See* D.D.C. Dkt. No. 20. A true and correct copy of the opposition is annexed hereto as **Exhibit 8.**

11. By May 2015, Kazakhstan's then-known defenses in the D.D.C. action were fully briefed. On April 5, 2016, Kazakhstan filed a Motion For Leave To Submit Additional Grounds

In Support of Opposition To Petition To Confirm Arbitral Award ("Motion for Leave"). *See* D.D.C. Dkt. No. 32, a true and correct copy of which is annexed hereto as **Exhibit 4**. A true and correct copy of the Stati Parties' Opposition in Response to Kazakhstan's Motion For Leave is annexed hereto as **Exhibit 5**. On May 11, 2016, the D.D.C. denied Kazakhstan's Motion for Leave. *See* D.D.C. Dkt. No. 36, a true and correct copy of which is annexed hereto as **Exhibit 6**.

12. On May 18, 2016, Kazakhstan filed a Motion for Reconsideration of the May 11, 2016 Order ("Motion for Reconsideration"). *See* D.D.C. Dkt. No. 37, a true and correct copy of which is annexed hereto as **Exhibit 7**.

13. The D.D.C. stayed the Washington Proceedings until the Svea Court of Appeal reached a decision in the Annulment Proceedings. *See Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179 (D.D.C. 2016). The Svea Court of Appeal reached a decision in the Annulment Proceedings on December 9, 2016 (the "Swedish Decision"). Compl. ¶ 17. On February 3, 2017, Kazakhstan filed a Motion to Quash the Swedish Decision in the Swedish Supreme Court ("Swedish Supreme Court Proceedings"). The D.D.C. continued the stay until the Swedish Supreme Court Proceedings have concluded. Ex. 3 (D.D.C. Docket) at Min. Order (8/15/2017).

14. In the event the D.D.C. lifts the stay in the Washington Proceedings, there are two issues for the court to decide: (1) Kazakhstan's pending Motion for Reconsideration and (2) Kazakhstan's defenses to confirmation of the Arbitral Award.

15. In the Swedish Supreme Court Proceedings, Kazakhstan argued in its Motion to Quash that the Svea Court of Appeal committed a "grave procedural error" by failing to rule on all of the issues presented.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 26, 2017.

_____

Matthew H. Kirtland