UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ANATOLIE STATI, GABRIEL STATI,
ASCOM GROUP, S.A. and
TERRA RAF TRANS TRAIDING LTD.,

                    Petitioners,

        v.                                          No. 1:17-cv-05742-RA

REPUBLIC OF KAZAKHSTAN,

                    Respondent.

## SECOND DECLARATION OF BO G.H. NILSSON

        Bo G.H. Nilsson, a duly-licensed attorney in Sweden, affirms the following to be true

under penalty of perjury under the laws of the State of New York.

        1.      My name is Bo G.H. Nilsson.  I am over the age of 18 and competent to make this

declaration.  All of the facts stated herein are within my personal knowledge and are true and

correct.

        2.      As I discussed in my prior Affirmation, the ROK filed the Swedish Proceeding in

the Svea Court of Appeal ("Swedish Court") on March 19, 2014.  In the Swedish Proceeding, the

ROK asserted that the Award was invalid under Section 33 of the Swedish Arbitration Act

(SFS1999:116) (the "SAA") and argued that the Award should be set aside pursuant to Section

34 of the SAA.

3.     The Swedish Court is an impartial Swedish Appeal Court that employs procedures compatible with the requirements of due process of law.

4.     The parties to the Swedish Proceeding were identical to those in the Article 53 action pending in the courts of New York.  Specifically, the parties were the ROK, Anatolie Stati, Gabriel Stati, Ascom Group, S.A. and Terra Raf Trans Traiding Limited.

5.     On December 9, 2016, the Swedish Court issued a final and binding decision on the merits in the Swedish Proceeding, rejecting the ROK's claims seeking to set aside the Arbitral Award and denying the ROK leave to appeal the decision (the "Swedish Judgment"). The Swedish Judgment was issued by the Swedish Court following a full hearing on the merits.

6.     The Swedish Judgment also awarded Petitioners over US $3 million in claimed legal fees.  The Swedish Judgment is a Swedish money judgment insofar as the costs are concerned.  The costs portion of the Swedish Judgment is final, conclusive, and enforceable in Sweden.  More importantly, the effect of the Swedish Judgment is that it has been established with finality that the Arbitral Award is enforceable in Sweden and that the allegations made by ROK that it should be invalidated under Section 33 or set aside under Section 34 were without merit.  In other words, the Swedish Judgment confirms that the Award has a status on par with a money judgment under Swedish law for the value of the Award.

7.     The ROK's contention that the Swedish Judgment did not "render [] the Arbitral Award enforceable in Sweden" is quite misleading. The Arbitral Award was enforceable and the Swedish judgment confirms this fact.  *See* ROK's Motion to Dismiss at 19.

8.     Where proceedings challenging a domestic award are ongoing in Sweden, the Enforcement Code makes the award creditor's ability to enforce the award is conditional upon

the Court not ordering a stay of enforcement; however, once the challenge has been adjudicated, the right to enforce becomes absolute, thereby cementing the status of the award as an enforceable instrument.

9.      During the Swedish Proceeding, the ROK had the opportunity to present its full case of fraud to the Swedish Court.  The Swedish Proceeding included a review of extensive evidence, including the ROK's allegedly "newly-discovered" evidence of alleged fraud.  After reviewing the evidence, the Swedish Court expressly rejected the ROK's claim that the arbitral Award should be invalidated or set aside because it was purportedly obtained by fraud.

10.     Following the Swedish Court's dismissal of the Swedish Proceedings, on February 3, 2017, the ROK filed a petition for extraordinary relief before the Supreme Court of Sweden (the "Extraordinary Petition"), collaterally attacking the Swedish Judgment on the grounds that the Swedish Court's proceedings allegedly violated Swedish law or procedure (the "Extraordinary Proceeding").  The ROK's Extraordinary Petition, brought under Chapter 59, Section 1 of the Swedish Code of Judicial Procedure (SFS1942:740), alleged that the Swedish Court committed a "grave procedural error" in connection with the Swedish Judgment.

11.     Under Swedish law, an extraordinary petition is not an appeal.  Chapter 59, Section 1 of the Swedish Code of Judicial Procedure provides that only a party whose legal rights are affected by a judgment that "has entered into final force" may request extraordinary review of the judgment for grave procedural errors.  A true and correct copy of the relevant portions of the Swedish Code of Judicial Procedure is attached hereto as **Exhibit F**.

12.     The Swedish Code of Judicial Procedure thus confirms that the Extraordinary Petition is not an appeal of the Swedish Judgment.  In fact, the Swedish Judgment is final,

immediately enforceable, and cannot be appealed.  The Swedish Judgment states on its face that it may not be appealed.  The Swedish Judgment could only have been appealed if the Swedish Court had permitted an appeal, which the Swedish Court explicitly refused to do.

13.     In its Extraordinary Petition to the Supreme Court of Sweden, the ROK has not claimed that it was unable to present its fraud case to the Swedish Court.  In fact, the ROK could not make such a claim because the ROK was given a full opportunity to, and did, present its fraud allegations to the Swedish Court.  The essence of the Extraordinary Petition is that the ROK alleges that the Swedish Court did not consider whether the arbitral tribunal's jurisdiction or the ROK's liability in damages had been affected by fraud but only whether the amount of damages had been so affected. This is based on a reading of the Swedish Judgment which does not accord with common sense.  Had the alleged fraud affected jurisdiction or liability it would obviously have affected the award of damages.

14.     The Extraordinary Proceeding is not an action for set-aside or suspension of the Award; it is concerned exclusively with the procedural conduct of the Swedish Court in a Swedish litigation proceeding.

15.     The grounds on which an extraordinary petition may be granted are exceedingly narrow.  For this reason, motions for extraordinary review are very rare, and hardly ever successful.  Of the approximately 220 cases seeking set-aside of an arbitral award that have been filed in Swedish courts since 2004, only three extraordinary petitions were filed.  All three were unsuccessful.  No Extraordinary Petition has ever been granted in a case involving a decision rejecting an action to set aside an arbitral award.  To date, the Extraordinary Proceeding remains

pending and the Swedish Supreme Court has provided no indication of when it will rule on the ROK's Extraordinary Petition.

16.     On September 15, 2017, the ROK moved, on an *ex parte* basis, for an order from the Supreme Court of Sweden suspending enforcement of the Award and the Swedish Judgment. A true and correct copy of the ROK's Application (in original Swedish and English translation) is attached hereto as **Exhibit G**.

17.     On September 20, 2017, the Supreme Court of Sweden, in an order issued by its Chief Justice, rejected the ROK's request for a suspension of enforcement of the Award and the Swedish Judgment.  A true and correct copy of the decision of the Supreme Court rejecting the ROK's request  (in original Swedish and English translation) is attached hereto as **Exhibit H**.

18.     Petitioners are thus free to, and intend to, continue with their efforts to enforce both the Swedish Judgment, which is final, and the Arbitral Award, which, by operation of Swedish law, is enforceable in Sweden in the same manner as a final and enforceable judgment of the Swedish courts.

19.     In fact, Petitioners recently obtained a judicial attachment in Sweden in aid of the Award of certain shares worth approximately US $100 million.  The Swedish Supreme Court was made aware of this attachment in connection with the ROK's request for a stay of enforcement, but denied the ROK's request in any event.  The attachment of approximately $100 million of corporate securities had the endorsement of the Swedish Enforcement Authority.

20.     In his declaration, Mr. Foerster asserts that "[u]nder Section 33 of the Swedish Arbitration Act, Kazakhstan is free to assert further grounds for invalidating the Arbitral Award, should such grounds arise [such that] Kazakhstan could in theory – subject to the principle of *res*

*judicata* – bring another petition to invalidate the Arbitral Award tomorrow….". I have the greatest difficulty in imagining circumstances under which the rule of *res judicata* would not constitute a bar to a new petition to invalidate the Arbitral Award. This possibility to me appears entirely theoretical indeed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 10 October 2017.

_____
Bo G.H. Nilsson